# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:24-CR-00084-01** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **GERALD SAM (01)** | **MAGISTRATE JUDGE DAVID J. AYO** |

## REPORT AND RECOMMENDATION

Before the Court is a MOTION TO SUPPRESS filed by defendant Gerald Sam (01). (Rec. Docs. 33). The government opposes the Motion (Rec. Doc. 38). The parties submitted post-hearing briefs at the Court's request. (Rec. Docs. 51, 52). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, the Court recommends that the instant motion be DENIED.

## Factual Background

Beginning in or about March of 2023, the St. Martin Parish Sheriff's Office ("SMPSO"), in concert with the U. S. Drug Enforcement Administration ("DEA"), began investigating a drug trafficking organization ("DTO") operating within the Western District of Louisiana. (Rec. Doc. 51 at pp. 1–2). As a result of that investigation, several vehicles used by the DTO were identified, including a white 2017 Chevrolet Silverado pickup truck ("white Silverado"). (*Id*.). On January 23, 2024 Detective Gavin Milby with the SMPSO applied for and was granted a tracking warrant on the white Silverado.[1] (Defendant's Exhibit

---

[1] Milby was identified as Detective during his testimony at the hearing. At the time of the application for search warrant at issue in this case (Rec. Doc. 49–1), Milby was identified as Deputy, denoting an intervening promotion.

1 at Rec. Doc. 49-1). This warrant entitled the SPSO to install a vehicle tracking device on the white Silverado. (*Id.*). Once installed, the tracking device provided information about the white Silverado's travel patterns, including drug resupply trips to and from Texas during late evening and early morning hours. (Rec. Doc. 51 at p. 3). Detective Milby notified the Jennings Police Department ("JPD") that information transmitted from the vehicle tracker indicated that the white Silverado would be traveling through Jennings on February 17, 2024. (*Id.*). Based on this "whisper tip" Detectives Eduardo Mendoza and Craig Crawford began following the white Silverado as it passed through their jurisdiction and observed two violations: unlawful window tint in violation of La. R.S. § 32:361.1 and failure to maintain lane in violation of La. R.S. § 32:79. (*Id.* at p. 3). On the basis of these violations, Detectives Mendoza and Crawford stopped the white Silverado, which was being driven on that date by defendant Gerald Sam. (*Id.* at pp. 3–4).

Once stopped, Sam was instructed to exit and step to the rear of the vehicle. (Rec. Doc. 38-1 at 5:22:37). Approaching Sam, Detective Mendoza advised Sam of why he was stopped. (Rec. Doc. 38-3 at 5:23:10). After Sam exited the vehicle, Detective Mendoza called in Sam's Louisiana driver's license, which returned reports of a history of, *inter alia*, simple battery, flight from an officer, resisting arrest, battery on a police office, aggravated assault and aggravated battery, as well as manufacture and distribution of Schedule II narcotics. (Rec. Doc. 38-3 at 5:26:42). While standing at the side of the vehicle, Detective Mendoza explained why he pulled Sam over. (*Id.* at 5:23:37). Specifically, Detective Mendoza advised Sam that his window tint was too dark, to which Sam responded, "yeah, I figured that." (*Id.* at 5:23:37). Detective Mendoza further advised that he observed the white Silverado's passenger-side tires "hit that white line." (*Id.* at 5:23:45).

Detective Mendoza asked Sam if he had been using marijuana or if the owner of vehicle used marijuana, which Sam denied as to both. Detective Mendoza next asked Sam if he would consent to a search of the vehicle, which Sam refused. At that point, Detective Mendoza attempted to detain Sam by placing his hands in cuffs, which Sam resisted. (Rec. Doc. 38-1 at 5:27:27). Once Sam was handcuffed and placed in the police car, the detectives conducted their search of the white Silverado.

Detectives Mendoza and Crawford placed a tint meter on the driver's side front and back windows, which gave readings indicating the vehicle's window tint was in violation of La. R.S. § 32:361.1. (Rec. Doc. 38-4 at 5:32:00). While standing next to the driver's side rear door, Detective Crawford stated that he could smell the odor of marijuana coming from the vehicle. (*Id.* at 5:32:09). Detective Mendoza agreed. (*Id.* at 5:32:10).

The ensuing vehicle search produced a black Louis Vuitton backpack containing approximately 500 grams of cocaine, as well as Sam's Louisiana driver's license and two bank cards issued to Sam. (Rec. Docs. 48-7, 48-8, 48-9). In addition, "a prescription bottle with a torn label containing a purple syrup-like substance suspected of being Promethazine with Codeine, a Schedule V Narcotic, and a plastic soda bottle with a syrup-like mixture suspected to contain Promethazine with Codeine" was taken into evidence. (*Id.*).

Sam was placed under arrest at the scene of the traffic stop and advised of his *Miranda*[2] rights while seated in back of the police car. (Rec. Doc. 38-2 at 05:30:56). Sam was transported to the Jennings police station and taken to the holding area to be searched before transfer to the parish jail. During his time in holding, Sam asked Detective Mendoza if he would be able to get his "book sack" back. (Rec. Doc. 38-5 at 06:09:20, 06:13:37). Sam then

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

explained that he had previously been stopped by police while traveling with a friend, who had put approximately $50,000 in this bag and, after his friend claimed ownership of the money, Sam was permitted to keep his bag once the money was taken into evidence.[3] (*Id.* at 06:14:02).

On April 17, 2024, Sam was indicted on one count of Conspiracy to Commit a Title 21 Controlled Substance Law Violation in violation of 21 U.S.C. § 846 and one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). (Rec. Doc. 1). The Indictment also contained a Forfeiture Notice that, upon conviction, Sam would forfeit ownership rights in, *inter alia*, "one black Louis Vuitton Designer Bag…$48,340.00 in U.S. Currency…[and] $3,600.00 in U.S. Currency." (*Id.* at p. 2).

Sam was arrested on July 9, 2024 on a warrant issued by the undersigned Magistrate Judge following his indictment. (Rec. Doc. 5). Sam was brought before U.S. Magistrate Judge Carol B. Whitehurst for an initial appearance and arraignment on July 15, 2024, at which time he entered a plea of not guilty to the counts contained in the Indictment. (Rec. Doc. 9). Trial was set for November 12, 2024 before U.S. District Judge Robert R. Summerhays in Lafayette, Louisiana. (Rec. Doc. 18). At Sam's request, this trial date was continued to January 13, 2025. (Rec. Doc. 28). Thereafter, counsel made a joint oral motion for continuance and to reset the trial beyond the bounds of the Speedy Trial Act, 18 U.S.C. § 3161. The motion was granted, and the trial of this matter was continued and reset for April 14, 2025 and remains so set. (Rec. Doc. 32).

---

[3]   This Court notes that Sam appears to be referring to an incident on or about October 2, 2023, in which Sam was stopped in a blue Dodge Charger by Sulphur police while traveling westbound on I-10 toward Texas. This incident is referenced in Deputy Milby's warrant affidavit at Rec. Doc. 49-1 at pp. 3–4.

4

Sam filed the instant motion on January 27, 2025. (Rec. Doc. 33). On January 28, 2025, this Court issued an Order setting the motion for in-person hearing with oral argument on February 27, 2025 before the undersigned Magistrate Judge. (Rec. Doc. 37). The motion was heard by this Court as scheduled. Retained counsel Ferdinand F. Valteau, III appeared on behalf of Sam, and Assistant United States Attorney LaDonte Murphy appeared on behalf of the government. (Rec. Doc. 46). Upon conclusion of the hearing, counsel were instructed to file post-hearing briefs on or before 5:00 p.m. on Thursday, March 13, 2025. (*Id.*). Having received the parties' briefs, this matter is properly before this Court for consideration. (Rec. Docs. 51, 52).

## Law and Analysis

"The Fourth Amendment protects 'the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'" *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The exclusionary rule is a prudential doctrine established by the Supreme Court forbidding the use of improperly obtained evidence at trial. *Id.*; *Davis v. United States*, 554 U.S. 229, 236 (2011). "The purpose of the exclusionary rule is to deter unlawful police conduct." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006). Suppression of evidence is considered "on a case-by-case basis" and should only be ordered "in those unusual cases in which exclusion will further purposes of the exclusionary rule." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)).

### *Probable Cause for the Vehicle Tracking Warrant*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST., AMEND. IV. "Probable cause does not

5

require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). The "good faith exception" to the exclusionary rule permits the introduction of evidence at trial obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but later found to be defective. *Leon*, 468 U.S. at 912 n. 9 (citing *United States v. Johnson*, 457 U.S. 537, 560 (1982)). Where the good faith exception applies, the search is made pursuant to a warrant and the court need not address an independent basis for probable cause. *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018).

The Fifth Circuit has identified four situations in which the good faith exception will not apply:

(1) when the issuing magistrate was misled by information in the affidavit that the affiant knew or reasonably should have known was false;

(2) when the issuing magistrate wholly abandoned his judicial role;

(3) when the warrant affidavit is so lacking in indicia of probable cause as to render the affiant's belief in the existence of probable cause unreasonable; and

(4) when the warrant is so facially deficient in failing to identify with particularity the place to be searched, and the persons or things to be seized that officers executing the warrant cannot reasonably presume its validity.

*United States v. Massi*, 761 F.3d 512, 530 (5th Cir. 2014) (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)).

Sam challenges the vehicle tracking warrant which enabled the placement of a vehicle tracking device on the white Silverado. More specifically, Sam asserts that the affidavit submitted by Deputy Milby contained inconsistent statements which failed to establish

probable cause for the issuance of the warrant. (Rec. Doc. 33 at ¶¶ 11–12, 17). Specifically, Sam points out that Milby's affidavit stated that

> [Sam] commonly operates a white BMW…and a white Chevy Silverado bearing license plate Z406648, which are both regularly parked at his residence at 1234 North Portage Hwy, Arnaudville, La.

(Rec. Doc. 49-1 at p. 3). Sam points out that the affidavit also states "[b]etween August and December 2023, the white Silverado was no longer parked at…1234 North Portage Hwy, and we were unable to locate its whereabouts." (*Id.* at p. 3). Sam further points out that the affidavit does not show that Sam was ever observed driving the white Silverado. (Rec. Doc. 33 at p. 5). For these reasons, Sam argues that Milby's statement that "I believe with the above mentioned information that [Sam] is normally and consistently operating the white Silverado bearing Louisiana license Z406648" is without basis and contradicted by prior statements in the same affidavit. (*Id.*).

Sam's argument omits Deputy Milby's statement that

> [o]n January 10, 2024, at approximately 1211 hours, I surveilled 1234 North Portage Hwy and personally observed Sam walking in his driveway towards the highway with only the white Silverado and his significant other Sharla Derouselle's vehicle parked in their driveway.

(Rec. Doc. 49-1 at p. 4).

Taken together, Deputy Milby's affidavit statements offer significant indicia of probable cause to believe Sam drives the white Silverado in furtherance of drug trafficking activity, even though it does not allege that Sam is the only driver, or that he maintains custody of the vehicle at all times. As the affidavit acknowledges, the white Silverado is not registered to Sam, which explains why he may not be the only driver. Moreover, the white Silverado was observed traveling toward Texas in a similar pattern to the white BMW which Sam also drove frequently and which was similarly not registered to him. (*Id.* at p. 3). That

7

the white Silverado was absent from Sam's residence for a period of several months is not dispositive of probable cause in this case. *Adams v. Williams*, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."). Indeed the white BMW in which Sam was pulled over on September 19, 2023 left Sam's custody at roughly the same time as the white Silverado returned to his custody in December of 2023. (*Id.* at p. 4). This Court finds that the warrant affidavit filed by Deputy Milby offered sufficient indicia of probable cause, such that the ensuing warrant was valid as a basis for the placement of the vehicle tracking device on the white Silverado.

### *Probable Cause for the Traffic Stop*

Generally, warrantless searches are unconstitutional, subject to limited exceptions. *United States v. Zavala*, 459 F. App'x 429, 433 (5th Cir. 2012) (citing *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)). The "automobile exception" provides that an officer may conduct a warrantless search where "a car is readily mobile and probable cause exists to believe it contains contraband." *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (quoting *Penn. v. Labron*, 518 U.S. 938, 940 (1996)). Probable cause can arise from the perceived odor of marijuana emanating from a vehicle and "justifie[s] a search of the entire vehicle, including [any] locked compartment" in which contraband may be concealed. United *States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989).

Where, as here, the evidence sought to be suppressed results from a traffic stop, Fifth Circuit law provides that

> the reasonableness of traffic stops and investigative detentions of persons suspected of criminal activity is evaluated through a two-step inquiry under *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007). First, we determine whether stopping the vehicle was initially justified by reasonable suspicion. Second, we evaluate whether the officer's

8

> actions were reasonably related in scope to the circumstances that justified the stop. In the context of a traffic stop, once an officer's suspicions "have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts.

*United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

Applying the two-step analysis, the court must first determine whether the initial stop was justified by reasonable suspicion. If it is shown that the defendant did not commit a traffic offense and such traffic offense is the basis for the stop, the stop is unjustified. *United States v. Cole*, 688, 690 (5th Cir. 2006).

Where a stop is found to be justified, the court must move on to the second prong of analysis, which asks whether the scope of the officer's actions was reasonably related to the circumstances justifying the stop. A traffic stop based on reasonable suspicion that the defendant has violated a traffic law "cannot continue for an excessive period of time or resemble a traditional arrest." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 185–86 (2004). "The time reasonably required to complete the mission of issuing a traffic ticket can include the time it takes to inspect the driver's license, automobile registration, and proof of automobile insurance; run computer checks; determine whether there are outstanding warrants against the driver; and ask the purpose and itinerary of the trip." *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016) (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)).

Applying the foregoing framework to the facts of this case, this Court finds that the traffic stop effected by Detectives Mendoza and Crawford was justified by reasonable suspicion. The video evidence offered by the government supports the reasonable belief of these detectives that Sam did, in fact, commit the traffic violations for which he was stopped. Government's Exhibit 4 shows the application of the tint meter to the vehicle and the corresponding results. La. R.S. § 32:361.1(C) provides that light transmission through the

9

rear, driver's-side window be no less than forty percent (40%) and no less than twenty-five percent (25%) through the rear driver's side window.  The tint meter readings taken at the scene of the traffic stop were five percent (5%) on the driver's window and zero percent (0%) on the rear, driver's-side window.  (Rec. Doc. 38-4 at 5:32:00).

Additional video evidence corroborates the detectives' reasonable suspicion that the passenger-side tires of the white Silverado touched the right-side white lane marker during the period when the detectives were observing Sam driving the vehicle.  (Rec. Doc. 38-1 at 5:18:01).  Careful review of this video affirms that the detectives were reasonable in concluding that Sam violated La. R.S. § 32:79 by failing to maintain his lane of travel while they were following him.  At hearing, Sam argued that the detectives made a parallax error in concluding that Sam failed to maintain his lane.  A parallax error occurs when the observer's eye is misaligned with the object, such that the observer is viewing the object from a side angle, rather than directly.[4]  Specifically, Sam argued that the detectives were in left-hand lane and observing the passenger side of the white Silverado in the right-hand lane, creating a significant angle, from which their view was altered.  The undersigned has reviewed this portion of video carefully and disagrees.  Detective Crawford, sitting in the front passenger seat of the police car, first observes the white Silverado's passenger-side tires cross the white lane marker while the police car was following Sam in the left-hand lane.  (*Id.* at 5:17:52).  Detective Mendoza exclaims, "God damn" while observing the white Silverado again.  (*Id.* at 5:18:01).  Immediately after this observation, Detective Mendoza, driving the police car, changes lanes and positions the police car directly behind the white Silverado.  As

---

[4]     https://en.wikipedia.org/wiki/Parallax.

10

the police car moves from the left to right lanes, the video depicts the rear passenger-side tires of the white Silverado touching the white lane marker. (*Id.* at 5:18:12).

To the extent that Sam argues that the traffic stop at issue was pretextual, that argument is unavailing. Where a tip from other law enforcement officers prompts an officer to begin observing a vehicle because of suspicion of drug trafficking, such stop is not unconstitutional as pretextual. Instead, under such circumstances, the stop is justified as long as the defendant committed a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996). Where an officer possesses a reasonable belief that a traffic violation has occurred, the fact that an officer may be motivated to investigate unrelated criminal offenses does not render the stop unreasonable. *Id.* at 810; *United States v. Sanchez-Pena*, 336 F.3d 437 (5th Cir. 2003).

Considering the video evidence affirming the reasonableness of Detectives Mendoza and Crawford's belief that Sam had committed violations of La. R.S. §§ 32:361.1 and 32:79, this Court finds that the traffic stop at issue was justified by reasonable suspicion. Having determined justification, this Court must next determine whether the scope of the traffic stop was reasonably related to the circumstances justifying the stop.

"A traffic stop 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.'" *U.S. v. Andres*, 703 F.3d 2013 (5th Cir. 2013) (quoting *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)). "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." (*Id.*) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010)). Reasonable suspicion may not be based solely on

11

an officer's hunch but need not rise to the level of probable cause. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

As discussed above, during the initial phase of the traffic stop, Detectives Mendoza and Crawford perceived the odor of marijuana emanating from the white Silverado. Fifth Circuit jurisprudence overwhelmingly affirms reasonable suspicion for a warrantless vehicle search based on the odor of marijuana. *United States v. Lork*, 132 F. App'x 34 (5th Cir. 2005); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989).

Sam argues that Detective Mendoza's sworn statement that he detected the odor of burnt marijuana coming from the vehicle's interior is not credible because the government did not establish that Detective Mendoza has "any training or experience in detecting the smell of marijuana." (*Id.* at pp. 16–17). This Court finds that at the hearing, it was clearly established that Detective Mendoza is a narcotics supervisor with approximately ten years of experience, including experience in detecting the smell of marijuana during traffic stops.

Sam further argues against Detective Mendoza's credibility based on Mendoza's testimony that he is permitted to make misleading statements to suspects during questioning and that he does employ this tactic on a case-by-case basis, where he believes it necessary and appropriate. "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak" do not violate a suspect's Fifth Amendment rights against self-incrimination. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495–96 (1977)).

Similarly, this Court also finds that Sam's argument that Detective Mendoza's failure to recall whether the moment when he first observed Sam's vehicle during his patrol was recorded and whether such recording was part of the government's evidence as indicia of Mendoza's lack of candor is without merit. The video at issue does exist and was introduced at the hearing as Defense Exhibit 2. (Rec. Doc. 49-2). That Detective Mendoza was not aware

of the precise catalog of video evidence produced by the Jennings Police Department in this case is not a basis for a finding of unreliability as to this witness.

Detectives Mendoza and Crawford also observed a soft drink bottle in the center console cup holder of the vehicle. (Rec. Doc. 38-3 at 5:23:33). Sam argues that Detective Mendoza's description of the soda bottle as "a plastic bottle containing a thick syrup-like substance suspected of being some form of Promethazine mixture liquid (with or without Codeine) in the center console" could not be based on his observation during the initial phase of the stop, since the bottle was "virtually empty" and sitting in the cup holder of the truck's center console, such that the bottom of the bottle was not visible from outside the truck. (Rec. Doc. 52 at pp. 12–13). Sam thus asserts that the soda bottle was not a valid source of reasonable suspicion for the vehicle search.

Government's Exhibit 6 is a photograph of the soda bottle in question next to a prescription bottle with the label partially torn off, indicating that the prescription bottle contains "PROMETHAZINE W/COD." (Rec. Doc. 48-6). This photograph appears to have been taken some time after the search during which it was found. The evidence before this Court does not indicate whether the soda bottle and prescription bottle were located near or next to each other in the vehicle during the initial phase of the stop.

If the prescription bottle was found in plain sight near the soda bottle, this Court would affirm the soda bottle and prescription bottle as a basis for reasonable suspicion of criminal activity, since abuse of promethazine cough syrup by mixing with beverages for recreational use is a widely acknowledged means of illegal narcotic use. *See, e.g.*, *United States v. Runsdorf*, 2022 WL 1198205 at *1 (5th Cir. 2022) (discussing the rise in popularity of promethazine cough syrup abuse and the slang terminology associated with this narcotic). Conversely, if the prescription bottle was found inside the center console compartment the ensuing vehicle search and not within plain sight, the virtually empty soda bottle would not

13

be a sufficient basis for reasonable suspicion of criminal activity. This Court makes no finding as to this particular evidence, given the lack of critical facts upon which such a finding would rest.

### *Sam's Waiver of Miranda Rights*

The Fifth Amendment provides that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. CONST., AMEND. V. In practice, the Fifth Amendment requires that police officers advise a suspect in custody of his right not to speak to them outside of the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436 (1966). Once advised of his rights, a suspect may waive them if such waiver is made "voluntarily, knowingly, and intelligently." *United States v. Alvarado-Palacio*, 951 F.3d 337, 341 (5th Cir. 2020) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citing *Miranda*, 384 U.S. at 444)). "A signed waiver form, though not conclusive, is 'usually strong proof.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). A signed waiver is not required for a finding of waiver, however. Absent indicia of coercion, threats, or intimidation, a defendant's "course of conduct" may give grounds for a proper inference of waiver. Similarly, a defendant who at first conducts himself in a manner indicating waiver may invoke his rights at a future moment. Taken together, these precepts place the defendant in control of the waiver or invocation of rights at all times. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (citing *Butler*, 441 U.S. at 376).

At the hearing, Sam argued that his statements regarding the ownership of the Louis Vuitton backpack and of his prior interaction with law enforcement regarding the backpack should be deemed inadmissible because Sam failed to give a knowing, intelligent, and voluntary waiver of his rights contemporaneous with those statements. Stated differently, Sam contends that a sufficient amount of time passed after he was advised of his rights while sitting in the police car that he should have been re-Mirandized before the statements at

14

issue were made. Finally, Sam argues that his decision not to waive his rights on the written *Miranda* form evidences his invocation of those rights, making his statements inadmissible.

The video evidence shows that Sam was advised of his *Miranda* rights while seated in the police car at the scene of the traffic stop. (Rec. Doc. 38-2 at 5:30:56). As the officer finished his advice of rights, a broadcast came through on the police car radio obscuring Sam's response. Sam admits that he was asking the officer a question at this point. (Rec. Doc. 52 at p. 17). The officer asks Sam to hold his question for "one second" to allow the broadcast to end so he could hear him. (*Id.* at 5:31:18). This Court's careful, repetitive review of the video evidence indicates that Sam questioned the officer regarding what he perceived to be an excessive use of force by Detectives Mendoza and Crawford while they were handcuffing him. (*Id.* at 5:31:24). In response, the officer explains "look, I don't know what they were trying to detain you for man, but when they tell you to put your hands behind your back, don't tense man." (*Id.* at 5:31:30). Sam argued "they asked me can I search your vehicle, and I said 'no' and they went crazy." (*Id.* at 5:31:42). Sam next questions whether the events about which he is concerned were captured on camera. The officer confirms that the police cars and each individual officer are equipped with cameras, such that the events of the night are all captured on video. (*Id.* at 5:31:51).

The next available video shows Sam arriving at the Jennings police station, where he was searched and prepped for transport to the parish jail. (38-5 at 5:56:32). No evidence was introduced to prove the amount of time that elapsed between the advice of *Miranda* rights at the scene of the traffic stop and Sam's arrival at the police station. Upon arrival at the police station, Sam again questioned the detectives' use of force in handcuffing him at the scene of the traffic stop. Sam again asked Detective Mendoza to verify that the cameras were capturing the events of the evening. (*Id.* at 5:59:43). Sam then told Detective Mendoza that

15

"I want you to know my man, I got a good lawyer bro…once we get them cameras, y'all gon' see…yeah, you and your partner." (Rec. Doc. 38-5 at 6:00:01). Detective Mendoza stated "listen, you were advised of your rights out there, ok, so I assume you're exercising your rights?" (Id. at 6:00:34). Sam replied, "yeah, I'm talking to you." Detective Mendoza clarified by asking "what I mean is you waive your rights and you wish to speak to me right now, so we can talk?" (Id. at 6:00:46). Sam responded "yeah." (Id. at 6:00:51). Sam was thereafter strip searched and an inventory of his personal property made by Detective Mendoza. Sam made the statements at issue regarding the Louis Vuitton backpack during the search and property inventory. (Id. at 6:12:05, *et seq.*).

Sam does not argue, nor does careful review of the video evidence show, the use of threats, intimidation, or coercion of any sort in Detectives Mendoza and Crawford's interactions with Sam. Similarly, no threats, intimidation, or coercion of any sort is alleged to have been used against Sam by the officer who Mirandized Sam in the police car.

This Court finds that Sam's "course of conduct" in which he initiated conversations with the officer who advised him of his rights, as well as Detectives Mendoza and Crawford, constituted sufficient indicia of a knowing, voluntary, and intelligent implicit waiver of his rights under *Miranda* in this case. Sam made no "unambiguous" invocation of the right to counsel and voluntarily spoke with various officers concerning several topics. *Berghuis*, 560 U.S. at 381 (citing *Davis v. United States*, 512 U.S. 452, 459 (1994) (a suspect must invoke his right to counsel under *Miranda* "unambiguously" and "unequivocally")). This Court also notes that Sam indicated his understanding of his rights under *Miranda* on the written "Miranda Warning" form. (Rec. Doc. 49-4). Specifically, Sam initialed ("G.S" next to each of the following statements.

- You have the right to remain silent anything you say may be used against you in a court of law.

16

- You have the right to talk to an attorney and have him present with you while you are being questioned.

- If you cannot afford to hire an attorney one will be appointed to represent you before any questioning if you wish.

- You can decide at any time to exercise these rights and not answer any questions or make any statements.

(*Id.*). At the bottom of the form, captioned "Waiver of Rights," Sam wrote and signed his name, but failed to elect "I DO" or "I DO NOT" as to whether he waived his *Miranda* rights. (*Id.*). As explained above, a written waiver of rights is substantial proof of waiver but is not required for a finding of waiver. This Court finds, however, that Sam's initials next to each listed *Miranda* right does support the "knowing and intelligent" nature of his voluntary waiver.

This Court also rejects Sam's contention that he should have been advised of his *Miranda* rights a second time before Detective Mendoza engaged in conversation with him at the police station. (*See*, Rec. Doc. 52 at p. 17). A second advice of *Miranda* rights is not required under the Fifth Amendment. *Burbine*, 475 U.S. at 421 (voluntary statements made approximately three hours after receiving Miranda warning constituted a "course of conduct indicating waiver").

## Conclusion

For the reasons discussed herein, the Court recommends that the MOTION TO SUPPRESS (Rec. Doc. 33) filed by Defendant Gerald Sam be DENIED in all respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

THUS DONE in Chambers, Lafayette, Louisiana on this 18th day of March, 2025.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**